# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8156 | **DATE** | 8/19/2002 |
| **CASE TITLE** | | Haywood vs. U.S.A. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting in part and denying in part Mr. Haywood's section 2255 petition to vacate, set aside or correct sentence. The petition is granted with respect to thirty-year sentences imposed on counts 6, 13 and 15 and they are replaced with twenty year sentences. The petition is also granted with respect to the eight-year sentences on counts 16, 18-25, and 28-32 and they are replaced with four-year sentences. The petition is otherwise denied. Any pending motion in this case is terminated as moot. Enter Amended Judgment in A Crminal Case.

(11) ■ [For further detail see

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

MPJ courtroom deputy's initials

number of notices: 2

AUG 2 0 2002
date docketed

docketing deputy initials

date mailed notice 8/19/02

Document Number: 12

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



AUG 2 0 2002

CLARENCE HAYWOOD,                )
                                 )
        Petitioner,              )
                                 )
        v.                       )   No.   01 C 8156
                                 )
UNITED STATES,                   )
                                 )
        Respondent.              )

## MEMORANDUM OPINION AND ORDER

Clarence Haywood was indicted along with thirty-eight other members of the Gangster Disciples, a gang of some 6,000 members engaged, through the early 1990s, in the sale of crack cocaine, heroin, and other drugs in the Chicago, Illinois, metropolitan area under the leadership of Larry Hoover, an inmate in the Illinois state prison system. In July 1997, after a 12-week jury trial, Mr. Haywood was convicted of twenty-seven narcotics violations, including: participating in a continuing criminal enterprise ("CCE"), 21 U.S.C. § 848, conspiring to possess controlled substances with the intent to distribute, § 846, seventeen counts of using the telephone to facilitate the drug conspiracy, § 843(b), two counts of using minors to further the drug conspiracy, § 861, and six counts of distributions of cocaine, § 841. He was sentenced to life in prison. He appealed and the Seventh Circuit affirmed his conviction on all but the conspiracy count, which it vacated as a lesser included offense of the CCE. *See United States v. Jackson,*



207 F.3d 910, 922 (7th Cir. 2000), *vacated in part by* 531 U.S. 953 (2000) (but not as to Haywood) (citing *Rutledge v. United States*, 517 U.S. 292, 307 (1996)), *reinstated by* 236 F.3d 886 (7th Cir. 2001). His petition for certiorari to the Supreme Court was denied in 2000. 531 U.S. 953.

Mr. Haywood filed a motion to vacate his sentence under 28 U.S.C. § 2255, citing six grounds of ineffective assistance of counsel for failing to object that: (1) the use of minors counts were inappropriate predicates for the CCE; (2) the jury instruction on the telephone counts constructively amended the indictment; (3) the jury improperly considered some individuals in determining the five or more whom Mr. Haywood supervised in the CCE; (4) the general verdict makes it impossible to tell what predicate offenses the jury considered, and the use of minors and telephone counts were invalid predicates; (5) the offense level for the CCE was incorrectly calculated at sentencing; and (6) the sentences for the distribution and telephone counts exceeded the statutory maximum. He filed a supplemental petition elaborating on these arguments and adding claims that: (7) *Apprendi v. New Jersey*, 530 U.S. 466 (2000), rendered § 841 unconstitutional; (8) the jury instruction for the CCE violated the rule in *Richardson v. United States*, 526 U.S. 813 (1999), that the jury must unanimously agree which specific predicate acts make up the "continuing series," and (9) during sentencing, the court specifically found that Mr. Haywood

-2-

was not an organizer, supervisor or manager, so his conviction for the CCE was invalid. Mr. Haywood asks for an evidentiary hearing. I deny his petition.

## I.

The Gangster Disciples was a large and notorious criminal enterprise, achieving, at its zenith in the early 1990s, revenues of $100 million a year. *See Jackson*, 207 F.3d at 913. It operated both on the streets of Chicago and within the Illinois state prison system, where Larry Hoover was incarcerated. Fifty to seventy percent of the Gangster Disciples' membership was involved in the buying and selling of narcotics. All members involved in the distribution of drugs had to do "nation work," which meant that members had to "donate" their profits from drug sales one day each week to Hoover and the gang's leadership. *See United States v. Hoover*, 246 F.3d 1054, 1061 (7th Cir. 2001). In addition to selling drugs, the Gangster Disciples ran several civic and political activities, including "Save the Children Promotions," a for-profit corporation that organized concerts and laundered drug money, and "Twenty First Century Vote," a political action committee that supported candidates and promoted voter registration.

The Gangster Disciples had an elaborate and sophisticated organizational structure with a clear hierarchy and strict rules that were enforced with beatings and worse. Hoover was the undisputed leader, and under him were two boards of directors: one

in the prison system and one on the streets. *Jackson*, 207 F.3d at 919. Below the board were about ten governors, *id.*, each with a territorial jurisdiction. Cedric Parks was the governor of "the hundreds," an area bounded by 99th Street and 127th Street to the north and south and by Cottage Grove Avenue and Western Avenue to the east and west. Tr. 2174, 2176. Mr. Haywood was an assistant governor for Parks, Tr. 813-14, and beneath him were regents, coordinators, chiefs of security, treasurers, and soldiers. Tr. 2173-80. At trial, the government introduced an organizational chart, prepared at Hoover's behest and found in the files of an organization run by Hoover's wife, which lists governors, regents, their territories and their "count," or number of members. Tr. 757. There were 1193 members on "count" in the hundreds, at least 70 percent of whom were involved in the distribution of narcotics. Tr. 2182. Those members reported directly to Mr. Haywood and Parks.

The evidence at trial did not establish Mr. Haywood's personal involvement in the telephone or distribution counts charged in the indictment, but he was convicted of these counts on a *Pinkerton* theory of co-conspirator liability. *See Pinkerton v. United States*, 328 U.S. 640, 645 (1946). The substantial evidence against him demonstrated that he was a regent, and later an assistant governor, in the hundreds, and that he had a "retail drug spot" on 108th Street. Tr. 1676-78; 2203. As an assistant governor, he distributed nation work and cooked cocaine into crack for Parks. Tr. 1652;

1677-78. He also collected money from gang members for the gang's non-drug-related activities. He arranged for the sale of drugs and sold some to an undercover agent himself, Tr. 1697-1702; 2012; 3770; 3827-34, and he bought drugs on several occasions from a former governor of the hundreds, Tr. 2207-09.

II.

With one exception, Mr. Haywood did not raise any of the arguments that he presents here on direct review. Ordinarily, the failure to do so results in procedural default. His ineffective assistance of counsel claims are not defaulted, however, because Mr. Haywood was represented by the same attorney at trial and on appeal. *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir. 1993). Many of his ineffective assistance of counsel claims may be resolved by examining the merits of the underlying claims; it is not ineffective assistance of counsel to fail to raise a losing argument. *See Whitehead v. Cowan*, 263 F.3d 708, 731-32 (7th Cir. 2001). The government does not argue that any of Mr. Haywood's other claims are procedurally defaulted, so I decide them on their merits as well.

A.

The trial court did not explicitly instruct the jury that it could consider the use of minors counts (counts 3 and 4) as predicate acts for the continuing criminal enterprise, but it instructed the jury that it could consider the offenses alleged in

the indictment, Tr. 7235, which included the use of minors. Indictment Count 2 ¶¶ 2(c), (d). The jury convicted Mr. Haywood of counts 3 and 4, and he claims that they are invalid predicate offenses for the CCE. To establish a CCE, the government must prove:

> (1) a violation of the federal narcotics laws; (2) which crime is a part of a series of violations of the federal narcotics laws; (3) undertaken by the defendant and at least five other individuals; (4) with respect to whom the defendant holds a supervisory, managerial, or organizational role; and (5) from which the defendant receives substantial income or resources.

*United States v. Gibbs*, 61 F.3d 536, 537 (7th Cir. 1995); 21 U.S.C. § 848(c). The Seventh Circuit has held, opposing seven other circuits, that a conspiracy or other inchoate offense cannot be used as one of the series of violations in a CCE. *United States v. Baker*, 905 F.2d 1100, 1104 (7th Cir. 1990). Mr. Haywood argues that, because the use of minor counts alleged that minors were used to further the drug conspiracy, an inchoate offense, they cannot be used as predicate offenses.

So far as I can tell, the Seventh Circuit has not squarely addressed this question—*i.e.*, whether the use of minors in furtherance of an inchoate offense can be a predicate offense for a CCE—but it has implicitly answered it affirmatively. In two other Gangster Disciples cases that involved charges of use of minors in furtherance of a drug conspiracy, the Seventh Circuit found convictions on those charges to be sufficient predicate offenses to sustain a conviction for a CCE. *See United States v.*

*Wilson*, 237 F.3d 827, 833-34 (7th Cir. 2001); *United States v. Smith*, 223 F.3d 554, 567-68 (7th Cir. 2000). The use of minors was a completed offense, even though the purpose for which they were used was to further an inchoate offense. There was no error in the jury instruction. Moreover, Mr. Haywood's attorney *did* object to the explicit inclusion of counts 3 and 4 in the CCE instruction, Tr. 6053-54, and he prevailed, so he was not ineffective.

B.

The trial court also instructed the jury, with respect to the use of telephone counts (counts 16-25 and 27-35), that it should find the defendants guilty if, among other things, it found that the "use of the telephone was to cause or facilitate the unlawful possession with intent to distribute or the unlawful distribution of cocaine, or to cause or facilitate a conspiracy to distribute, or to possess with intent to distribute cocaine." Tr. 7245-46. The indictment, however, only alleged the use of telephones in furtherance of the conspiracy to possess and distribute, not the underlying possession and distributions. Mr. Haywood claims that this jury instruction constructively amended his indictment, rendering the conviction for those counts invalid.

"A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), [or] the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction

beyond those presented by the grand jury." *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994). However, "not all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendments." *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994). Extra words that "do not create a risk of conviction for an uncharged offense" are "generally benign." *Id.*

A constructive amendment violates the Fifth Amendment and is reversible *per se* if the defendant raised the proper objection before the trial court. *United States v. Remsza*, 77 F.3d 1039, 1043 (7th Cir. 1996). If there was no objection, a constructive amendment is reviewed for plain error, which means that the constructive amendment "must constitute 'a mistake so serious that but for it the [defendant] probably would have been acquitted' . . . . In other words, the constructive amendment must be prejudicial." *Id.* at 1044 (also citing *United States v. Olano*, 507 U.S. 725 (1993), defining the plain error standard of review).

The Fourth Circuit has held that constructive amendments result in error *per se* and must be corrected even if no objection was preserved. *See Floresca*, 38 F.3d at 714. In doing so it relied on *dicta* in *Olano* suggesting that some errors "are so corruptive to the judicial process" that they must be corrected without a showing of prejudice or that prejudice will be presumed. *See id.* The Seventh Circuit was not persuaded by this *dicta* when it decided

*Remsza*, 77 F.3d at 1044 ("The Court's dicta aside, the law in this circuit is clear."), and it has since considered the Fourth Circuit's blanket rule and declined to adopt it, noting its prior application of the plain error standard in *Remsza. See United States v. Cusimano*, 148 F.3d 824, 828 n.3 (7th Cir. 1998) (but not reaching the question of whether constructive amendments are always plain error because it found there was no constructive amendment). Thus I conclude that the rule in this circuit continues to be that a defendant must show that he was prejudiced by a constructive amendment. *See United States v. Folks*, 236 F.3d 384, 390-91 (7th Cir. 2001) (applying plain error standard where no objection was made in trial court and requiring defendant to show that he probably would have been acquitted but for the constructive amendment). Where, as here, the claim is that trial counsel was ineffective for failing to properly raise the objection, the prejudice inquiry "is essentially identical to the prejudice requirement" for plain error, which means that Mr. Haywood must show that, but for his counsel's failure to object, the result of his trial would have been different. *Remsza*, 77 F.3d at 1044.

The jury instruction did not constructively amend the indictment because it did not broaden the bases for conviction. Mr. Haywood was charged with the use of telephone charges under a *Pinkerton* theory of liability, which means that he could only be convicted if the jury found that Mr. Haywood was a member of the

conspiracy and that the use of the telephone by his co-conspirators was "in furtherance of or [was] a natural consequence of the conspiracy." *United States v. Sax*, 39 F.3d 1380, 1388 (7th Cir. 1994). No matter what the jury instruction on the telephone counts said, it was cured by the *Pinkerton* instruction, Tr. 7240-41, which required the jury to find, in order to convict Mr. Haywood, that the use of the telephone furthered the conspiracy or was a natural consequence of it. *See United States v. Swanquist*, 161 F.3d 1064, 1076 (7th Cir. 1998) (finding that any possibility of constructive amendment of indictment by expanding the basis of conviction was "cured" by subsequent instruction, which correctly instructed jury about what it needed to find to sustain conviction). For the telephone counts, the indictment charged Mr. Haywood with the use of the telephone, not with the underlying activity that the use of the telephone caused or facilitated, as a crime in furtherance of the conspiracy. *Pinkerton* liability could only attach if the use of the telephone was in furtherance of the conspiracy, so if the jury found that the use of the telephone was to cause or facilitate a drug possession or distribution, it must have also found that the possession or distribution was in furtherance of the conspiracy. In light of the jury instructions as a whole, *see id.* (holding that, in determining whether constructive indictment occurred, court must look at the allegedly erroneous instruction in context of "the charge as a whole"), the jury instructions did not effect a

-10-

constructive amendment because they did not broaden the bases for Mr. Haywood's conviction.

Even if the addition of the substantive distribution and possession offenses in the jury instruction was construed as constructively amending the indictment, Mr. Haywood was not prejudiced by the "excess verbiage" in the jury instruction. There was no evidence that Mr. Haywood personally participated in the charged counts of possession or distribution, so to find him liable for the telephone counts on that basis, the jury must have found that they were committed in furtherance of or were a natural consequence of the conspiracy, which the use of the telephone also furthered.

C.

1.

To sustain the CCE conviction, the government had to prove that the enterprise was undertaken by Mr. Haywood and at least five other individuals with respect to whom Mr. Haywood held a supervisory, managerial, or organizational role. *Gibbs*, 61 F.3d at 537. Mr. Haywood says that among the list of 850 potential supervisees, there were individuals that could not, as a matter of law, have been supervisees. Because there was no special verdict, he says, it is not possible to determine whether the jury relied on impermissible supervisees.

When a conviction is based on several alternative grounds and one turns out to be insufficiently supported by the evidence, a special verdict form is unnecessary and the verdict may stand as long as there is at least one alternative that was sufficiently supported by the evidence. Where, however, one basis turns out to be legally or constitutionally unsupportable as a matter of law, the verdict cannot stand. *See Griffin v. United States*, 502 U.S. 46, 59 (1991). *See also United States v. Barona*, 56 F.3d 1087, 1096-97 (9th Cir. 1995) (Where "the government produce[s] an extensive list of individuals, allowing the jury to pick those who it felt met the definition of supervisee," and it turns out that certain individuals were legally incapable of being supervisees, the jury must be instructed to disregard those individuals.).

Unlike *Barona*, 56 F.3d at 1096-97, however, the government here did not provide a list of names from which the jury was instructed to select five supervisees. Instead, it relied on evidence of Mr. Haywood's place in the Gangster Disciples' hierarchy. "The CCE statute is directed against all enterprises of a certain size; the identity of those involved is irrelevant." *United States v. Beverly*, 913 F.2d 337, 353 (7th Cir. 1990) (citing *United States v. Markowski*, 772 F.2d 358, 364 (7th Cir. 1985)). The government may "establish that an individual's place in the hierarchy or structure of the organization establishes his direction of five or more people." *United States v. Alvarez*, 860

-12-

F.2d 801, 817 (7th Cir. 1988) (citing *Markowski*, 772 F.2d at 360, in which evidence showed that defendant was a manager of a structured enterprise). The government did so here.

Mr. Haywood argues that the government offered evidence of 850 potential supervisees. Tr. 6061. He says that the list of 850 included Cedric Parks, James Yates, Timothy Nettles,[1] Jeffrey Hatcher, Delano Finch, Roger Stewart and Darryl Johnson, who he argues were not legally qualified as supervisees because some of them supervised him. They were listed as co-defendants in other counts, but the number 850 was derived from the organizational chart and the testimony that established the structure of the Gangster Disciples. Mr. Haywood does not identify any portion of the record that shows that the government identified any specific individuals as supervisees, *cf. Alvarez*, 860 F.2d at 817, much less these particular individuals. My review of the government's closing arguments demonstrates that all references to Mr. Haywood's position as an organizer, supervisor or manager related to the number of Gangster Disciples members "on count" in his territory based on the organizational chart. Tr. 6542, 7156-57. The jury was never presented with legally invalid supervisees from which it had to choose, so there was no need to instruct the jury to disregard them.

---

[1] Nettles was actually a regent, beneath Mr. Haywood in the Gangster Disciples hierarchy.

Even if there had been a specific list that included legally ineligible supervisees, Mr. Haywood was not prejudiced. The Seventh Circuit has indicated that it would agree with the Ninth Circuit's decision in *Barona* and require an instruction excluding legally ineligible supervisees,[2] although it did not squarely reach the question. *See United States v. Lindsey*, 123 F.3d 978, 985 (7th Cir. 1997). In *Lindsey*, however, as here, the defendant had not objected to the absence of such an instruction, so the court reviewed the instructions under the plain error standard of *Olano*.[3] *Id*. The court noted that it might have been faced with "a much more difficult problem" if the defendant had objected and been overruled, *id*., but nonetheless concluded that, "since there [wa]s adequate evidence of [the defendant's] supervision of a sufficient number of persons whom he clearly 'managed,' there is no plain error here." *Id*. at 986. The same result obtains here, where there was ample evidence that Mr. Haywood supervised more than five people as an assistant governor in the Gangster Disciple hierarchy.

Mr. Haywood was not prejudiced by the failure to instruct the jury to disregard legally ineligible supervisees, but I believe

---

[2] The government does not dispute that the individuals listed by Mr. Haywood, with the exception of Nettles, were legally ineligible "supervisees."

[3] As I noted above, to the extent that Mr. Haywood argues that the failure to object was ineffective assistance of counsel, the prejudice required to demonstrate plain error is the same as is required to demonstrate a denial of effective assistance of counsel. *See Remsza*, 77 F.3d at 1044.

-14-

that his argument goes further than that. He argues that his counsel was ineffective for "allow[ing] the jury to use people from [the use of telephone] counts to satisfy the five or more element of CCE." Petition Ground 2. I have already rejected his claim that the legally ineligible defendants (specifically, Parks, Johnson, Yates, Stewart, Hatcher and Finch) in the telephone counts were included among the 850 supervisees, but he raises a more difficult question: whether it matters that the people who committed the predicate acts for which he is liable were *above* him in the hierarchy and were not supervisees.

To begin with, it is irrelevant that Mr. Haywood did not himself commit the predicate offenses; "CCE convictions are valid whether or not [the defendants] personally committed the predicate offenses on which the CCE convictions depend." *Hoover*, 246 F.3d at 1057 (citing *Pinkerton*, 328 U.S. 640). Hierarchy is not an essential element of a conspiracy; what matters is only Mr. Haywood's membership in the conspiracy and the foreseeability of his co-conspirators' actions. "It is possible that a low-level street dealer might not be able to foresee all of the actions of the ringleaders of the conspiracy, and that people out on different 'spokes' of the conspiratorial wheel might similarly be unaware of the role others are playing." *Smith*, 223 F.3d at 573. But Mr. Haywood was not a "low-level street dealer," and he does not challenge the ample evidence that the acts of his superiors were

-15-

both foreseeable and in furtherance of the enterprise. "*Pinkerton* liability applies in general to conspiracies and CCEs," *id.*, so Mr. Haywood is liable for the predicate offenses as if he committed them himself.

The question he seems to raise is whether it matters that the co-conspirators who did actually commit the predicate offenses for which he is liable were not supervisees. This is a subtle, but ultimately unsuccessful, statutory interpretation argument. Mr. Haywood appears to argue that, because the predicate offenses were committed by superiors rather than supervisees, they run afoul of § 848(c), which defines "continuing criminal enterprise." That section provides that:

> a person is engaged in a continuing criminal enterprise if--
>    (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
>    (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
>       (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
>       (B) from which such person obtains substantial income or resources.

Under (c)(1), it is clear that the defendant—here Mr. Haywood—must commit the act, either personally or by means of co-conspirator liability. It is subsection (c)(2)(A) that poses an interesting question: does the continuing series of violations referred to have to be committed by or together with the five or

more supervisees? Although I was unable to find any decision of the Seventh Circuit that is directly on point, I conclude that subsection (c)(2)(A) does not require the predicate acts to be committed by or together with the five or more supervisees.

First, there is the statutory structure: (c)(1) describes the acts that the *defendant* must commit--narcotics violations--and (c)(2) describes the circumstances under which they must be committed--as part of a greater scheme of violations, and the scheme must be one in which the defendant supervises five or more people and from which he realizes substantial financial gain. The Supreme Court has acknowledged that the series of predicate offenses that the defendant must commit is "a different portion of the statute" from the requirement that the defendant supervise five or more other persons. *Richardson v. United States*, 526 U.S. 813, 824 (1999).

Second, the Supreme Court has not defined the phrase "in concert with" to require concerted *action*. It has held that "the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise." *Rutledge v. United States*, 517 U.S. 292, 300 (1996) (holding that conspiracy is lesser-included offense of CCE). *See also id.* at 299 n.10 (noting that "in concert" "commonly signifies agreement of two or more persons in a common plan or enterprise").

I am aware of no authority that has interpreted subsection (c)(2)(A) to require the participation of the defendant's supervisees in the predicate acts committed by or attributed to the defendant. In light of the Supreme Court's interpretation of the supervision portion of the statute as separate from the predicate act portion, and its interpretation of "in concert" to require an agreement, but not concerted action, I conclude that, as long as the predicate acts are properly attributable to Mr. Haywood on a theory of co-conspirator liability, it is irrelevant that they were actually committed by non-supervisees. The jury instructions were not erroneous, the verdict is not flawed, and Mr. Haywood was not prejudiced by any failure of his counsel to object to the identity of the five supervisees.

2.

One further point on Mr Haywood's role in the CCE: he argues that because the sentencing court did not find that he was a "principal administrator, organizer, or leader of the enterprise" for the purpose of the mandatory life sentence in 21 U.S.C. § 848, it found that he was not an organizer, supervisor or manager of at least five people for the purpose of his CCE conviction. However, the court noted that "there is a difference between saying somebody is an organizer, supervisor or manager of five or more other persons, which is the offense language [in §§ 848(a) and (c)], and the 'such person [i]s a principal administrator, organizer or

-18-

leader of an enterprise,' . . . which is the language of [§] 848(b), the penalty section of that statute." Sentencing Tr. at 77. This finding, that Mr. Haywood was not a "*principal* administrator, organizer or leader" does not in any way undermine the jury's determination that he was *an* organizer, supervisor or manager.

D.

When Mr. Haywood was tried and convicted in 1997, the trial judge did not instruct the jury that it had to agree unanimously on which crimes served as the predicate offenses for the CCE charge. In 1999, the Supreme Court held that the CCE statute "requires jury unanimity in respect to each individual 'violation.'" *Richardson v. United States*, 526 U.S. 813, 824 (1999).[4] The issue was raised on direct appeal, and the Seventh Circuit held that, to the extent that the failure to instruct the jury that it had to unanimously agree on which specific acts were the predicates for the CCE was error, the error was harmless because the jury found the defendants guilty on more than three separately charged predicate offenses. *Jackson*, 207 F.3d at 919; *see also Lanier v. United States*, 220 F.3d 833, 839-40 (7th Cir. 2000) (holding that failure to give *Richardson* instruction was harmless error where jury separately and unanimously convicted defendant of crimes that served as CCE predicates).

---

[4] *Richardson* has been held to be retroactive on collateral review. *See Fischer v. United States*, 285 F.3d 596, 600 (7th Cir. 2002).

Ordinarily, "in the absence of changed circumstances of fact or law, [I] will not reconsider an issue which was already decided on direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Mr. Haywood does not offer any such changed circumstances, but instead argues that his counsel was ineffective for failing to point out the prejudice he suffered from the error, which he says was that the general verdict makes it impossible to tell whether his CCE conviction rested on impermissible grounds and that there was no evidence of personal involvement.

As I have already noted, Mr. Haywood was convicted of the predicate offenses on a *Pinkerton* theory of liability, so personal involvement was unnecessary, *see Hoover*, 246 F.3d at 1057; *Smith*, 223 F.3d at 573, and the general verdict does not render the CCE conviction invalid under *Richardson*. Mr. Haywood again invokes *Griffin v. United States*, for the proposition that, where two bases for conviction are offered and one basis turns out to be legally or constitutionally unsupportable as a matter of law, the verdict cannot stand. 502 U.S. at 59. He challenges the validity of the use of minor and use of telephone counts, but I have already determined that his objections are without merit. He argues that the conspiracy charge, which was thrown out by the Seventh Circuit as a lesser-included offense, *Jackson*, 207 F.3d at 922, cannot be a predicate offense to a CCE charge, *see Baker*, 905 F.2d at 1104, but there is no indication that the conspiracy charge was submitted to

the jury as a predicate offense. The jury instructions did not list conspiracy, and although the jury was instructed that it could consider the offenses in the indictment, Tr. 7235, the CCE count listed only the charged incidents of possession and distribution (counts 5-8, 10, 13-15, 26, and 36-37), the use of telephone to further the conspiracy (counts 9, 16-25, 27-35), and the use of minors (counts 3 and 4) as predicate offenses. Because none of the predicate offenses offered as bases for the CCE conviction are invalid, *Griffin* is inapplicable. Mr. Haywood was not prejudiced by the failure of his counsel to press these arguments.

E.

In his amended petition, Mr. Haywood argues that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to jury and proved beyond reasonable doubt, renders 21 U.S.C. § 841(a) and (b) facially unconstitutional. *Apprendi* is not retroactive on collateral review, *Curtis v. United States*, Nos. 01-2826, 01-2827, 2002 WL 1332817, at *1, *3 (7th Cir. June 19, 2002), but even if I construe Mr. Haywood's argument as one for ineffective assistance of counsel, the merits have been soundly rejected, *see United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001); *see also United States v. Bjorkman*, 270 F.3d 482, 490-92 (7th Cir. 2001) (declining to reconsider *Brough*); *Hoover*, 246 F.3d at 1058 (same),

so he suffered no prejudice from the failure to raise the argument below.

F.

Finally, Mr. Haywood challenges his sentences for the CCE and several of the predicate acts. He claims that the sentencing court erred in relying on the U.S.S.G. § 2D1.2 enhancement for the use of a minor, and that his counsel was ineffective for failing to object because it would have resulted in a lower base offense level and given the court the option to sentence him to less than life imprisonment. Mr. Haywood is mistaken about how the court arrived at the offense level for the CCE count.

The court adopted the factual findings and guideline application in the presentence investigation report ("PSI"). Am. Judgment at 6. The PSI calculated the base offense level for the CCE count at 44, which was adjusted in the Amended Judgment to a level of 43 pursuant to Application Note 2 to the Sentencing Table in Chapter 5 of the Sentencing Guidelines. Section 2D1.5 governs CCE convictions and dictates that the offense level should be the greater of thirty-eight or four plus the offense level from § 2D1.1 for the underlying offense. Under § 2D1.1, the offense level for the underlying conspiracy was 38 because it was reasonably foreseeable that at least 150 kilograms of cocaine or 1.5 kilograms of cocaine base would be distributed. § 2D1.1(c)(1). The PSI applied a two-level enhancement under § 2D1.1(b)(1) for the use of

-22-

dangerous weapons (*e.g.*, firearms). That brought the base level to forty, plus the four prescribed by § 2D1.5(a)(1). The court did not apply any enhancement for the use of minors to the CCE count, so Mr. Haywood suffered no prejudice from the failure to object on that basis.

He also argues that the sentences on counts 3, 4, 5, 6, 9-20, and 22-32 exceeded the statutory maximum. Counts 3 and 4 charged violations of 21 U.S.C. § 861(a)(1) and (2), respectively, for the use of minors to commit and cover up narcotics violations. The penalty for a violation of § 861(a) is set forth in § 861(b):

> Any person who violates subsection (a) of this section is subject to twice the maximum punishment otherwise authorized and at least twice any term of supervised release otherwise authorized for a first offense. Except to the extent a greater minimum sentence is otherwise provided, a term of imprisonment under this subsection shall not be less than one year.

The underlying offense was the conspiracy in count 1, which has a maximum sentence of life imprisonment, so the statutory maximum for counts 3 and 4 is life imprisonment. Mr. Haywood relies on § 861(d), which is actually an enhancement providing that anyone who provides or distributes drugs to a person under the age of eighteen or who uses any minor under the age of fourteen shall be subject to no more than five years imprisonment or a $50,000 fine, but he omits the next clause of § 861(d), which says "in addition to any other punishment authorized by this section." Five years plus life is still life, so the life sentences on counts 3 and 4 are valid.

The government concedes that the district court sentenced Mr. Haywood in excess of the statutory maximum on some of the distribution and use of telephone counts, although it does not identify which ones. Mr. Haywood challenges counts 5, 6, 9-20 and 22-32. He was not charged in count 12, and he was not convicted of counts 5, 9-11, 14, 17, 26 or 27, so no sentence was imposed and he has no basis for complaint with regard to those counts. The remaining challenged distribution counts are 6 (52.36 grams of cocaine mixture), 13 (176.62 grams of cocaine mixture), and 15 (56 grams of cocaine mixture). Mr. Haywood was sentenced to thirty years for each of these distribution counts. Am. Judgment at 2. Because these involved amounts less than 500 grams of cocaine mixture, however, the statutory maximum for these counts was only twenty years. *See* 21 U.S.C. § 841(b)(1)(C).

The remaining challenged use of telephone counts are 16, 18-25,[5] and 28-32. The maximum penalty for first-time offenders of § 843(b) is four years. 21 U.S.C. § 843(d)(1) (also providing for eight-year maximum for a person with a prior narcotics conviction). He was sentenced to eight years for each of these counts, Am. Judgment at 2, although he had no prior convictions of any kind, PSI at 15.

---

[5] Although Mr. Haywood does not specifically challenge the sentence imposed for count 21, he was convicted of that count and sentenced to eight years for it, so I assume that he meant to challenge that sentence as well.

The government concedes that these sentences exceed the statutory maxima, but it urges me to conclude that Mr. Haywood was not prejudiced by the erroneous sentences on counts 6, 13, 15, 16, 18-25, and 28-32 because of the life sentences imposed on counts 2,[6] 3, 4, and 37. *See United States v. Page*, 232 F.3d 536, 545 (6th Cir. 2000) (finding, on direct appeal, reviewing for plain error, that sentences beyond statutory maxima were not prejudicial because the total sentence would not be affected on resentencing). The Seventh Circuit has expressed some support for this approach, *see United States v. Hill*, 30 Fed. Appx. 602, 604 (7th Cir. 2002) (unpublished order) (declining to remand for resentencing on direct appeal where erroneous life sentence would be replaced with 130-year sentence), but on a motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, I believe that the better approach, and one within my power, is to "vacat[e] sentences imposed in violation of the U.S. Code even though this will not shorten the petitioner's stay in prison." *United States v. Lloyd*, 983 F. Supp. 738, 744 (N.D. Ill. 1997) (Aspen, C.J.). *Cf. Burgos v. United States*, 968 F. Supp. 380, 383-84 (N.D. Ill. 1997) (Conlon, J.) (finding that defendant could not establish prejudice on ineffective assistance of counsel claim where sentencing error did

---

[6] The government relies on count 1, but I assume that it means count 2. Count 1 was the conspiracy count that was vacated as a lesser-included offense of the CCE in count 2, *Jackson*, 207 F.3d at 922, on which a life sentence was also imposed. Am. Judgment at 2.

not result in longer sentence overall). A sentence imposed in excess of the statutory maximum is "fundamentally unfair", *see* *Lloyd*, 983 F. Supp. at 745, and rather than sweep this violation under the rug, the appropriate remedy is to vacate the erroneous sentences and correct them. I therefore vacate Mr. Haywood's thirty-year sentences on counts 6, 13 and 15 and replace them with twenty year sentences, and I vacate the eight-year sentences on counts 16, 18-25, and 28-32 and replace them with four-year sentences. This does not affect his overall sentence because I find that the life sentences in counts 2, 3, 4, and 37 were properly imposed, but it sets the record straight.

III.

I GRANT Mr. Haywood's petition with respect to the thirty-year sentences imposed on counts 6, 13 and 15 and replace them with twenty year sentences, and also with respect to the eight-year sentences on counts 16, 18-25, and 28-32, which I replace with four-year sentences. The petition is otherwise DENIED.

ENTER ORDER:

*Elaine E. Bucklo*
_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 19, 2002